IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-20188
Summary Calendar
_____


MICHAEL COONTZ; RUTH COONTZ;
ALLISON COONTZ,

Plaintiffs-Appellants,

versus

KATY INDEPENDENT SCHOOL DISTRICT;
JINX READ; LEONARD MERRELL,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-96-CV-3413)
_____

September 14, 1998

Before REAVLEY, WIENER and EMILIO M. GARZA, Circuit Judges.

REAVLEY, Circuit Judge:[*]

The district court dismissed with prejudice pursuant to Rule
12(b)(6) section 1983 claims for the violation of privacy and
substantive due process liberties, and Title IX and section 1983
claims for sex-based discrimination. We AFFIRM.

_____

        *. Pursuant to 5TH CIR. R. 47.5, the Court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

## BACKGROUND

In February 1995, Allison Coontz, a high school senior in the Katy Independent School District and the head of the Taylor High School cheerleading squad, attended a Mardi Gras festival in Galveston, Texas. Her trip was in no way connected with the school or her obligations as a cheerleader. While in attendance, she was cited for the offense of "Minor in Possession" (MIP). Apparently, a fellow attendee inaccurately reported to school officials that Allison had been arrested at the event.

On March 8, 1995, Allison's citation was dismissed. While it was pending, however, the head girls' cheerleading coach, Jinx Read, questioned Allison about the incident. Read told Allison that a local police officer had been working at the Mardi Gras event, had recognized Allison, and that it was he who reported Allison's "arrest" to the school. Appellants claim that Read's statement was a lie. Read then examined Allison "inquisitorially" and inquired "about Allison's communications with her parents on the matter." Pls.' First Am. Compl., ¶ 10, at 5 (R. No. 15).

Following her inquiry, Read instituted various disciplinary measures against Allison. Read removed Allison from the position of head cheerleader, temporarily suspended her from the squad, and substituted her cheerleading duties for those of an "office assistant." Additionally, Read threatened to expel Allison from the squad outright if her citation was not dismissed, barred her from participating in cheerleading tryouts, and refused to allow

2

Allison to speak at the year-end sports banquet.  Further, the school omitted any additional photographs of Allison from the high school annual other than her class picture and her picture among the cheerleaders.  The Coontzes allege that these sanctions were materially different from those that male football players faced when caught cheating and drinking.  *See* Pls.' Second Am. Compl., ¶¶ 13-15, 17-18, 23-24, at 5-7 (R. No. 21).

The Coontzes contend here that their allegations suffice to state a claim against the school defendants.  They offer three theories.  First, they argue that the school deprived them of their protected right to privacy.  Second, they assert a constitutional privilege to be free from government harassment and emotional distress, which they characterize as a substantive liberty of due process that the school violated.  Third, the Coontzes argue that the school determined Allison's punishment on the basis of her sex in violation of her rights under the Constitution and Title IX.  For the following reasons, we reject each of these theories.

**DISCUSSION**

**I.  Standard of Review**

Our review of the district court's Rule 12(b)(6) dismissal is de novo.  *See Holmes v. Texas A&M Univ.*, 145 F.3d 681, 683 (5th Cir. 1998); *Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir. 1995).  We will affirm the district court's order "only if it appears that no relief could be granted under any set of

3

facts that could be proven consistent with the allegations."
*Holmes*, 145 F.3d at 683 (citations and internal quotation marks omitted).

## II.  Privacy

The Coontzes' first argue that they have pleaded facts supporting their claim that Read impermissibly invaded their family's right to privacy.  We disagree.

The Constitution restricts the ability of the government to intrude upon the private affairs of its citizens.  *See Whalen v. Roe*, 429 U.S. 589, 598-602 (1977); *Ramie v. City of Hedwig Village*, 765 F.2d 490, 492 (5th Cir. 1985).  "The liberty interest in privacy encompasses two notions: the freedom from being required to disclose personal matters to the government and the freedom to make certain kinds of decisions without government interference."  *Ramie*, 765 F.2d at 492.  One strand protects the confidentiality of private information; the other protects the autonomy of private action.

### a.  Autonomy

The autonomy interest protects decisions associated with "'family relationships[] and child rearing and education.'"  *See Whalen*, 429 U.S. at 600 n.26 (quoting *Paul v. Davis*, 424 U.S. 693, 713 (1976)).  Although the Coontzes argue that the school's actions interfered with their right to make independent family choices about their daughter's behavior and discipline, they

4

pleaded no facts in support of this theory. To state a claim under the autonomy branch, the school, through the actions of Read, must have removed an alternative from the Coontzes' decisionmaking process. *See Plante v. Gonzalez*, 575 F.2d 1119, 1130 (5th Cir. 1978). Government conduct that merely deters does not suffice. *See id.* at 1126 (citing *Bullock v. Carter*, 405 U.S. 134, 142-43 (1972)). The Coontzes' brief asserts that the school's "punishment was based on the fact that [the school] felt that [Allison's] parents' method of addressing the Mardi Gras situation was insufficient," and that "the school officials overstepped their authority when they sought to force the Coontz parents to punish Allison." Appellant Br. at 8-9. The only fact the Coontzes have alleged that is capable of supporting such a conclusion, however, is their allegation that "Defendant Read . . . asked about Allison's communications with her parents on the matter." Pls.' Second Am. Compl. ¶ 10, at 4 (R. No. 21). This does not provide the requisite factual basis for the Coontzes' autonomy claim. Something more is required to bridge the gap between this question about Allison's family and a disciplinary response to Allison's pending citation. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). As the Coontzes have twice failed to allege any intermediate fact that would tend to substantiate their conclusion, we may assume no such fact exists. We agree with the

5

district court's assessment that the facts supporting a privacy claim, if they support any privacy claim at all, arise solely under the confidentiality strand of the privacy right.

**b.    Confidentiality**

The confidentiality strand is "'the individual interest in avoiding disclosure of personal matters.'" *Plante*, 575 F.2d at 1132 (quoting *Whalen*, 429 U.S. at 599).  It includes a right to be free from the government's public disclosure of its citizens' private facts and also from government inquiry "into matters in which it does not have a legitimate and proper concern." *Ramie*, 765 F.2d at 492.  No facts alleged in the Coontzes' complaint suggest that the school publicly disclosed any of the information it gained about the incident in Galveston, nor do the Coontzes make the argument on this appeal.  Instead, they argue that Read required Allison to disclose information about which the school had no business inquiring.  Specifically, they claim that Read's questions invaded the sanctity of "their in[tra]-family communications."  Pls.' Second Am. Compl. at 8 (R. No. 21).

At the outset, we note that the Coontzes complain that Read questioned Allison about her citation in an "inquisitorial" style and lied to Allison during the questioning.  *See id.* ¶ 10, at 4. Though it may create other remedies, such an allegation does not state a confidentiality claim.  In *Ramie v. City of Hedwig Village*, 765 F.2d 490 (5th Cir. 1985), this court found that abusive and harassing government questioning does not on its own

6

violate an individual's liberty interest in privacy. *Id.* at 493. By the same token, the Coontzes' allegations concerning Read's disagreeable deportment cannot, standing alone, establish an invasion of their family's liberty interest in confidentiality.

Further, even assuming that the school improperly compelled Allison to divulge information about her family's response to the incident in Galveston, we nevertheless hold that the dismissal of the confidentiality claim was appropriate. Although the government may not invade private matters, whether or not personal information is private is a matter of reasonable expectations. *See, e.g.*, *Plante*, 575 F.2d at 1135. And, even if a matter is private, whether a requirement that it be disclosed to the government violates the right of privacy is resolved by weighing the relative interests of the state and the individual. *See Ramie*, 765 F.2d at 492 ("To determine whether the questioning amounted to a violaton of Ramie's right to privacy, this court must decide whether the invasion of privacy . . . outweighs the government's legitimate interests."). Both determinations present questions of law which we may dispose of on this appeal. *See Plante*, 575 F.2d at 1137-38.

In *Ramie*, this Court noted that the Constitution protects against invasions of privacy involving only "the most intimate aspects of human affairs." *Id.* at 492. In the context of extra-curricular school activities, the zone of privacy that a student or her parents may legitimately anticipate is substantially diminished. In *Vernonia School District v. Acton*, 115 S. Ct.

7

2386 (1995), the Supreme Court upheld a school drug testing program directed at student athletes. *See id.* at 2396. The Court emphasized its previous holding that the state's power over public school students "is custodial and tutelary, permitting a degree of supervision and control that could not be exercised over free adults." *Id.* at 2392. As such, students cannot legitimately expect to be free from school inquiry into the subject of off-campus consumption of drugs.

In the present case, the Coontzes' have no greater expectation of privacy than did the Acton family in *Vernonia*. The Coontz family could not legitimately expect their daughter to participate in a school-sponsored, extra-curricular activity like cheerleading free from the possibility that she would be questioned and disciplined if reports -- however inaccurate -- that she had been involved in the off-campus consumption of alcohol were to reach the cheerleading coach.

The Coontz family first attempts to distinguish *Vernonia* on the basis that its holding is derived from Fourth Amendment jurisprudence, while they allege a violation of their privacy under the First and Fourteenth Amendments. *See* Appellant Br. at 10-11. For purposes of our present analysis, we reject this distinction. The *Vernonia* Court determined that the mandatory urinalysis program was reasonable only after first evaluating the privacy interests that the testing program invaded. *See Vernonia*, 115 S. Ct. at 2391 ("The first factor to be considered is the nature of the privacy interest . . . ."). The Supreme

Court found it of "[c]entral" importance that its examination of the privacy interest, like ours, arose in the context of "children in school." *Id.* at 2391-92. The Court further noted that "Fourth Amendment rights, *no less than First and Fourteenth Amendment rights*, are different in public schools than elsewhere; the 'reasonableness' inquiry cannot disregard the schools' custodial and tutelary responsibility for children." *Id.* at 2392 (emphasis added). Hence, the Supreme Court's writing in *Vernonia* controls our analysis of what constitutes a private matter among participants in extra-curricular school activities. We hold that the school did not intrude into any matter that was, in a constitutional sense, private, at least not to such an extent that the school's interest does not justify it.

The Coontzes also argue that *Vernonia* can be distinguished because the interest of the public schools in addressing drug and alcohol abuse among student athletes is more weighty than is their interest in confronting the problem among student cheerleaders. *See* Appellant Br. at 11. Although the Court in *Vernonia* justified its holding in part on the concern that student athletes, because of their athletic endeavors, expose themselves to specialized harms from drug use that the student population as a whole might not face, *see Vernonia*, 115 S. Ct. at 2395, we think it clear that the same generalized concern applies to the athletes that populate modern high school cheerleading squads. Nor can the fact that *Vernonia* involved a urinalysis test for drug use distinguish it in any material sense from the

9

present case involving a school's inquiry into alleged alcohol consumption.


### III. Substantive Due Process

The Coontzes next argue that their substantive due process claim should not have been dismissed. The district court held that "Plaintiffs cite no legal authority to support their argument that there is a constitutional right to be free from humiliation and mental anguish." *Coontz v. Katy Indep. Sch. Dist.*, No. H-96-3413, slip. op. at 3 (S.D. Tex. Sept. 30, 1997) (R. No. 24) (hereinafter "*Coontz II*"). The Coontzes argue that *Spacek v. Charles*, 928 S.W.2d 88 (Tex. App.--Houston [14th Dist.] 1996, writ dism'd w.o.j.), announced a substantive due process right to be free from such "unseen harms" as humiliation and mental anguish. *See* Appellant Br. at 14-15. The district court twice ruled -- after dismissing the Coontzes' first and second amended complaints -- that *Spacek* involved the application of Texas's qualified immunity law and is therefore inapposite to the substantive due process question stated here. *See Coontz II*, at 3. Although we agree with the district court that the Coontzes have failed to state a valid claim, we believe it unnecessary to decide the application of *Spacek*. Rather, having examined the conduct of the school against substantive due process precedents, we find that the Coontzes' complaint, as a matter of law, does not rise to the level of a constitutional violation.

In *Brennan v. Stewart*, 834 F.2d 1248 (5th Cir. 1988), Judge Gee described the substantive aspects of due process:

The strands of "substantive" due process can be conceptually distinguished but they are intertwined. Every action by government must be rationally related to its end, and ends that "shock the conscience" or otherwise violate the norms "implicit in the concept of ordered liberty" are illegitimate. Even arguably legitimate state ends can be met only by means that do not impinge on certain individual rights deemed "fundamental" by the federal judiciary, and thus certain legitimate state ends cannot be reached in accordance with "the concept of ordered liberty."

*Id.* at 1256. Hence, if the Coontzes' factual pleadings support a claim that the school (1) deprived the Coontzes of a fundamental right in a manner that does not survive strict scrutiny, (2) conducted itself so contrary to contemporary standards as to "shock the conscience," or (3) acted arbitrarily or according to illegitimate ends, then the Coontzes' substantive due process claim should not have been dismissed under Rule 12(b)(6). We hold that the Coontzes' complaint satisfies none of these standards.

The Coontzes have claimed that the school disrupted their ability to raise Allison as they wished. The interest of the family in rearing its children without government interference is a fundamental one. *See Qutb v. Strauss*, 11 F.3d 488, 495 (5th Cir. 1993). However, we have already determined that the school did not invade this interest by questioning and disciplining Allison when we held that the Coontzes failed to state facts supporting their autonomy claim. The same determination answers the present question. If the family interest is not involved,

11

then only Allison's right to participate in school-sponsored extra-curricular activities remains, which is not fundamental. *See Vernonia*, 115 S. Ct. at 2393.

Furthermore, the school's actions in this case do not "'shock the conscience' of federal judges." *Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992). In making this determination, we note that,

> [a]s a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.

*Id.* at 125 (citation omitted). The Coontzes complain that the school removed Allison from her position as head cheerleader, omitted additional photographs of Allison from the high school annual, suspended her from participation on the cheerleading squad for several weeks, denied her the opportunity to speak at the sports banquet, and threatened to expel her from the squad outright were she convicted of the MIP charge. *See* Pls.' Second Am. Compl., ¶¶ 13-15, 18, at 5-6 (R. No. 21). These actions do not reach the level of a constitutional deprivation, as the district court noted in its opinion: "To treat plaintiff's complaints as asserting constitutional violations 'would tend to trivialize the Fourteenth Amendment by making it a magnet for all claims involving personal information, state officers, and unfortunate indignities.'" *Coontz v. Katy Ind. Sch. Dist*., No. H-96-3413, slip op. at 7 (S.D. Tex. June 23, 1997) (R. No. 19)

12

(citation omitted). And, although Texas may provide a state tort remedy for intentional infliction of emotional distress, this does not transform the Coontzes' claim into a constitutional tort to be free from state-caused humiliation or mental anguish, unless the actions of the state that caused the distress are brutal and shocking. Thus, the Coontzes cannot convert their failed tort claim into a section 1983 constitutional claim. *See, e.g.*, *Collins*, 503 U.S. at 128; *F.M. Prop. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996).

Finally, the school's response to Allison's Mardi Gras incident must have been rationally related to some legitimate end or else the school overstepped its authority. It is clear by now that a school may legitimately address the problem of off-campus drinking and drug use among the school-aged children in its charge. The Supreme Court's opinion in *Vernonia* makes this apparent. *See Vernonia*, 115 S. Ct. at 2394-96. The question, then, is whether the penalties Read administered to Allison were rationally related to that legitimate purpose. *See Collins*, 503 U.S. at 1070 ("The Due Process Clause is not a guarantee against incorrect or ill-advised . . . decisions."). A reasonable fit will be adequate. *See Reno v. Flores*, 507 U.S. 292, 305 (1993). The Plaintiff argues they were not. *See* Pls.' Second Am. Compl., ¶ 16, at 5 (R. No. 21). We think it apparent that all of the disciplinary measures Read chose are at least reasonably related to the school's legitimate goal of deterring off-campus alcohol consumption among its student body.

13

## IV.  Sex-Based Discrimination

Title IX and the Equal Protection Clause both protect individuals from invidious government decisionmaking based on the characteristic of sex.  *See* 20 U.S.C. § 1681 (1994).  As support for their claim that Allison's punishment was due to her sex, the Coontzes point to lesser sanctions applied to football players, who were male.  Assuming, as the Coontzes allege, that the football players were treated differently, we find the Coontzes' argument unavailing.  Although football players and cheerleaders are both athletes and participants in school-sponsored extra-curricular activities for purposes of our reading of *Vernonia*, above, football players and cheerleaders need not follow identical codes of conduct for purposes of an Equal Protection Clause analysis.  The Coontzes must make a showing that the groups are situated similarly, or that the difference in treatment between football players and cheerleaders is traceable to the sex that predominates among the members and not to other differences between the groups.  We hold that the Coontzes have failed to provide any factual support for their sex-based discrimination claims, and AFFIRM the district court's order dismissing them.

AFFIRMED.

14